Halbrook vs. The State.

---

HALBROOK. VS. THE STATE.

1. BIGAMY:
   If A marries B, and afterward, while B is alive, marries C, and afterward, when B is dead, or divorced, marries D while C is living, this last marriage is not bigamous, the second being absolutely void.

2. SAME: *Evidence of marriage: Admissions—Cohabitation, etc.*
   In prosecutions for bigamy, the deliberate admissions of a defendant that a woman was his wife, and evidence that he cohabited with, treated and held her out to the community as such, may go to the jury for what they are worth, as tending to prove an actual marriage.

3. MARRIAGE: *Divorce decree, evidence of.*
   The record of a decree of divorce, in a suit of which the defendant has had legal notice, is evidence of the marriage.

APPEAL from *Conway* Circuit Court.

Hon. W. D. JACOWAY, Circuit Judge.

*Fletcher*, for appellant.

*Henderson, Attorney General, contra.*

ENGLISH, C. J.   It appears from the transcript in this case, that, on the first day of the October term, 1875, (eleventh of October), of the circuit court of Conway county, a grand jury was impanneled, and retired to consider of their duties.

Then follows an indictment against Jeremiah H. Halbrook for bigamy, indorsed by the clerk: "Filed in open court, this sixteenth day of October, 1875," but no record entry is copied in the transcript, showing that the indictment was presented in court by the grand jury.

Supposing there was such an entry, as there should have been, and that the clerk had failed to transcribe it, a *certiorari* was ordered, upon which the clerk has returned that no entry showing that the indictment was presented in court by the grand jury, appears of record.

The indictment charges, in substance. that on the second of November, 1866, the defendant was married, in Conway county, to Jane Honeycutt, and that, on the twenty-sixth of July, 1875, when she was living, and still his wife, he feloniously married Mary Mahan, in said county.

He was tried at the September term, 1879, found guilty, and the jury fixed his punishment at imprisonment for three years in the penitentiary; a new trial was refused, he was sentenced, took a bill of exceptions, and prayed an appeal, which was allowed by one of the judges of this court.

It appears from the bill of exceptions that, on the trial, the state proved by the record of marriages of Conway

county, that appellant was married to Jane Honeycutt, on the second of November, 1866, in Conway county, by a justice of the peace of said county, he then being forty-three years of age, and Jane seventeen.

The state also proved, by the same record of marriages, that defendant was married, under a license, on the twenty-seventh of July, 1875, to Mary Mahan (seventeen years of age), by a minister of the gospel.

The state then proved, by two witnesses, that they were present and saw defendant married to Jane Honeycutt, on the second of November, 1866, and were present, subsequently, and witnessed a marriage, on the twenty-seventh of July, 1875, in Conway county, between defendant and Mary Mahan, and that Jane Honeycutt was still living in Conway county at the time defendant was married to Mary Mahan.

The court excluded all of the evidence offered by appellant, as shown below.

I. The first ground of the motion for a new trial is that the verdict was not warranted by the evidence.

The statute provides that: "Every person, having a wife or husband living, who shall marry any other person, whether married or single, except in the cases specified in the next section, shall be adjudged guilty of bigamy. *Gantt's Digest, section 1312.*

The next section makes five exceptions, which are matters of defense. *1 Greenleaf Evidence, sec. 208.*

The indictment (says Mr. GREENLEAF) states the first and second marriages, and alleges that, at the time of the second marriage, the former husband or wife was alive. The proof of these three facts, therefore, will make out the case on the part of the prosecution. In regard to the first marriage, it is sufficient to prove that a marriage, in fact, was

33

celebrated according to the laws of the country in which it took place; and this, even though it were voidable; provided it were not absolutely void. This may be shown by the evidence of persons present at the marriage, with proof of the official character of the celebrator; or, by documents legally admissible—such as a copy of the register, where registration is required by law, with proof of the identity of the person; or, by the deliberate admission of the prisoner himself.

In proof of the second marriage (he continues) the same kind of evidence is admissible as in proof of the first. But it must distinctly appear that it was a marriage in all respects legal, except that the first husband or wife was then alive; that it was celebrated within the county, etc. Proof of the second marriage, by reputation alone, is not sufficient. *1 Greenleaf Ev.*, secs. *204, 205.*

The state proved both the first and second marriage, alleged in the indictment, by the record of marriages, which our statute makes evidence (*Gantt's Digest, sec. 4140*), and by witnesses present at the marriages.

The case was well made out on the part of the state.

II. After the state had closed, appellant introduced Miles Price and Thomas Halbrook, who stated, after being sworn as witnesses in the case, that they had been acquainted with the appellant for many years; that he was married when about nineteen years old to one Margaret Halbrook, in Perry county, Tennessee; that he was now (time of the trial) fifty-seven years of age; that they were not present at such marriage, but, by reputation, such marriage occurred within ten miles of where they resided, and that, within a few days thereafter, appellant brought his wife into the immediate neighborhood of witness Price, and there they remained together as husband and wife for

two or three months, and that appellant and his said wife, Margaret, lived and cohabited together as husband and wife, in the state of Tennessee, and later in the states of Arkansas and Missouri, for many years, and had born to them, and reared by them, a large family of children ; that some of said children now reside in the neighborhood of witness, and that witness had, within the last three months, seen letters from Margaret, wife of appellant, who, by reputation, still lives in Green county, Missouri, but witness had not seen her since 1863.

But the court ruled that such evidence was irrelevant and incompetent, and excluded the same from the jury; to which ruling appellant excepted.

Appellant then offered in evidence a certified transcript of the record of a decree, rendered in the circuit court of Phillips county, in the state of Missouri, on the twenty-eighth of November, 1866, in a suit for divorce by Margaret J. Halbrook against Jeremiah H. Halbrook, dissolving the bonds of matrimony theretofore contracted between them, and giving her the care of their infant children, and alimony to be charged upon certain real estate of the defendant in that suit. The decree shows that the defendant therein had notice by publication, and that there had been a previous default entered against him, but does not show when the bill was filed, nor when the marriage dissolved by the decree had been entered into by the parties to the suit.

The court refused to permit appellant to read in evidence the transcript of the record of the decree, and he excepted.

Appellant offered no other evidence.

The appellant asked the court to give the jury seven instructions. The court gave the first, which defined the

crime of bigamy (having given a similar instruction on the part of the state), and refused the others.

(*a*) The court having excluded all of the evidence offered by appellant, there was nothing on which the instructions refused could be based. They were mere abstract propositions of law.

The instructions refused presented, in different forms, the propositions that appellant's marriage with Jane Honeycutt, when his first wife, Margaret, was living, and undivorced from him, was null and void, and that his marriage with Mary Mahan, after the first wife obtained the divorce, was not bigamous, because he then had no lawful wife.

(*b*) If the facts hypothecated in this proposition had been proved by competent evidence, it would have been good law.

Upon the hypothecated facts, the case would have been similar, on principle, to Lady Madison's case, reported in *1 Hale's Pleas of the Crown, p. 693*, thus: "A takes B to husband in Holland, and then in Holland takes C to husband, living B, and then B dies, and living C, she marries D; this is not marrying a second husband, the former being alive, for the marriage to C, living B, was simply void, and so he was not her husband; but if B had been living, this had been felony to marry D in England; ruled at Newgate sessions, about 1648, in the *Lady Madison* case."

Mr. GREENLEAF, after stating the points that the state is required to prove, as above, adds: "The defense may be made by disproving either of the points above stated. Thus, where a woman married a second husband abroad, in the lifetime of the first, and afterward the first died, and then she married a third in England, in the lifetime of the second, and for this third marriage she was indicted; upon proof that the first husband was living when the second

marriage was had, it was held a good defense to the indictment; the second marriage being a nullity, and the third, therefore, valid." *3 Greenleaf Ev., sec. 208, citing Lady Madison case; State v. Goodrich, 14 West Va., 834,* is similar to the case now before us.

So in this case, if appellant was married to Margaret Halbrook in Tennessee, and she was living when he married Jane Honeycutt, the latter marriage was null and void; and if Margaret Halbrook had obtained a divorce from him before he married Mary Mahan, this third marriage was valid, and not bigamous, as alleged in the indictment; but the marriage with Jane Honeycutt was bigamous

Appellant, however, could not be convicted on this indictment for the bigamous marriage with Jane Honeycutt, because that is not the offense with which he is charged.

(c) Did the court err in excluding all the evidence offered by appellant, as incompetent and irrelevant?

In indictments for bigamy, proof of marriage is required to be more strict than in civil cases.

But it is reasonable to hold that appellant should have been allowed to introduce any evidence conducing to prove his marriage with Margaret Halbrook, relied upon by him to defeat the case made by the state, which the state might have been permitted to introduce to prove the same marriage, had the indictment alleged it to be the first marriage, and a subsequent marriage to be the bigamous marriage.

It is established by the current of adjudications, that in prosecutions for bigamy, the deliberate admission of the defendant that a woman was his wife, and evidence that he cohabited with, treated and held her out to the community as such, may go to the jury for what they are worth, as tending to prove an actual marriage. *Regina v. Simmons, 1 Carrington & Kirwan, N. P., 164, 47 Eng. C. L., 164;*

*Commonwealth v. Jackson, 11 Bush. (Kentucky), 679,* in which the English and American cases are reviewed; *Warner v. Commonwealth, 2 Virginia cases, 95; Cameron et al. v. State, 14 Ark., 546; Cook v. State, 11 Georgia, 54; State v. Britten, 4 McCord, 255; Wolverton v. State, 16 Ohio, 173; Clayford's case, 7 Greenleaf, 57; State v. Hodskins, 19 Maine, 158.*

In New York, where it has been held that an actual marriage must be proved, and that the prisoner can not be convicted on mere admissions, or evidence of cohabitation (*People v. Humphrey, 7 Johnson, 314*), yet in *Gahagan v. People, Parker's Cr. R., 380,* such admissions and proof of cohabitatien as husband and wife, were held to be admissible as tending, with other facts, to prove an actual marriage.

In this case, appellant offered to prove, by two witnesses, a reputed marriage with Margaret Halbrook in Tennessee; that they cohabited as husband and wife there, and later in this state, and in Missouri for many years, and reared a family of children. This cohabitation occurred before there could have been any object on the part of appellant to make evidence to be used in this prosecution.

Presumption of marriage arises from cohabitation as husband and wife.

There was also a presumption that appellant's marriage with Jane Honeycutt was lawful, innocent, and not criminal. It is supposed that a man will not incur the guilt of felony and danger which attends it by marrying another woman during the life of one to whom he has previously been lawfully married. *2 Wharton's Evidence, sec. 1297; Jones v. Jones, adm'x, 48 Maryland, 39.*

Had appellant's evidence of cohabitation been admitted, it would have been the province of the jury, under proper directions from the court, to weigh the presumptions in making up their verdict.

(*d*) But the court also excluded the transcript of the record of the Missouri divorce decree.

With some evidence *aliunde* of identity of parties, this decree would have proven that on the twenty-eighth day of November, 1866, about twenty-six days after appellant's marriage with Jane Honeycutt, and before he married Mary Mahan, Margaret Halbrook obtained a divorce from him.

The decree would also have proved that Margaret Halbrook was living at the time appellant married Jane Honeycutt, because she obtained the decree, and was awarded by it care of her infant children after that marriage. The decree was also evidence that a marriage had been contracted between the complainant and defendant in that suit, because courts do not grant divorces without proof of marriage.

Marriage is the foundation of the whole proceedings, and the decree or sentence granting a divorce, in form and effect, affirms the marriage as well as declares the separation. *Bishop on Marriage and Divorce, sec. 315.*

The decree would also have conduced to prove that appellant's marriage with Margaret Halbrook occurred before his marriage with Jane Honeycutt, but about twenty-six days having transpired between the dates of the latter marriage and the time of the decree, which was obtained on publication. These twenty-six days were periods of appellant's honeymoon with Jane Honeycutt, a young woman whom, according to the theory of his defense, be it said to his shame, he deceived and deluded into an illegal marriage, and made her in law an adulteress. But a man indicted for one crime can not be convicted on proof that he has committed another.

After offering the decree in evidence, appellant offered

no evidence of identity of parties, but the decree having been excluded, this would have been useless.

The evidence of cohabitation should have gone to the jury for what it was worth, and the decree should have been admitted.

The judgment must be reversed, and the cause remanded for further proceedings.

If the indictment was in fact presented in court by the grand jury, it may be shown by a *nunc pro tunc* entry when appellant is in court, and he may be tried again on the same indictment. Otherwise he may be held to answer a new indictment if the state elects further to prosecute him. *Green v. State, 19 Ark., 178; Halcomb v. State, 31 Ark., 427.*